## Case No. 4,635.

### The FANITA.

[8 Ben. 11.][1]

District Court, S. D. New York. Feb., 1875.[2]

W. R. Beebe, for libellant.
J. E. Parsons, for claimants.

BLATCHFORD, District Judge. This libel is filed by the owner of the schooner Samuel G. Miles, against the steamship Fanita, to recover for the damages sustained by the libellant through a collision which occurred between the two vessels in the East river, between New York and Brooklyn, at about 9 o'clock, p. m., on the 20th of August, 1870. The schooner had come around the Battery, and was bound to Williamsburgh, with a cargo of brick. The steamship was a propeller of 434 tons burden, and was bound down the river on a voyage to Philadelphia. The wind was north west to west north west, and the schooner was sailing up with her booms off to starboard. The tide was ebb. The stem of the propeller struck the starboard bow of the schooner between her forechains and her stem. The wound went in as far as the forehatch of the schooner, a distance of about fourteen feet, in a direction towards the port quarter of the schooner, and on a line which, if continued, would have reached to a point on the port side about ten feet forward of the stern of the schooner. The schooner sank immediately, in from 40 to 45 feet of water.

The libel alleges that the schooner had all

[3] See 8 Wait, St. Pap. 387–394; 10 Wait, Confid. St. Pap. p. 470.

[1] [Reported by Robert D. Benedict, Esq., and Benj. Lincoln Benedict, Esq., and here reprinted by permission.]

[2] [Modified in Case No. 4,636.]

her regulation lights set and burning brightly, and a competent man on the lookout, who was carefully attending to his duty, and a competent and careful man at the wheel; that she had reached a point in the East river to the westward of pier 10; that the lights of the propeller were made off the starboard bow of the schooner and ahead, and in such a position and course, that, had she kept it, she would have passed on the starboard side of the schooner, the schooner then being about 150 yards from the end of the piers, and sailing steadily along upon her course; that both vessels kept on their respective courses until they had neared one another; that, when about abreast of pier 10, the propeller suddenly changed her course by porting, and came rapidly upon the course of the schooner, and upon the schooner; and that the collision was the fault of those navigating the propeller, in not having a competent and careful outlook, attending to his duty, and not keeping in the middle of the river as required by law to do, in running so close to the docks, in not keeping her course, and not keeping upon a course which would have carried her clear of the schooner, and in changing her course and running upon the schooner.

The answer alleges, that, some distance before the propeller reached pier 10, those in charge of her observed the red light of the schooner very nearly ahead, bearing about half a point on the starboard bow of the propeller; that thereupon the wheel of the propeller was ported, so as to enable her to pass the schooner to the right; that the course of the propeller was changed sufficiently to enable her to safely pass the schooner, and she was then steadied on her course; that she continued on such course until shortly before the collision, the schooner bearing on the port bow of the propeller, when the course of the schooner was changed, so as to bring her directly across the bow of the propeller; that in consequence, the schooner was struck by the propeller and sunk; that no green or starboard light on the schooner could be observed from the propeller; that the course of the propeller was from 150 to 200 yards from the ends of the piers; that, as soon as the danger of collision became apparent, the propeller was slowed and stopped; and that the collision was caused by the fault of those in charge of the schooner, in trying to pass to the starboard instead of to the port side of the propeller and in crossing the course of the propeller.

At the time of the collision there were four hands on board of the schooner, namely: Lancaster, the sailing master, who was at the helm; Mackey, who was forward, as a lookout; a cook, who was drowned in the sinking of the schooner; and another hand, who died in 1873. Lancaster and Mackey have been examined as witnesses for the libellant.

Lancaster had not seen the lights of the propeller until just as the propeller was striking the schooner, and then he saw them off his foreboom, on the starboard bow. He says that he had not heard any report of the propeller or of her light, from Mackey, until just as she was coming into the schooner, and that, when he first saw her, her stem was but a very few feet, probably ten or twelve, from the schooner. He also says, that he had made no change in his helm after he came around the Battery and before the collision. But it is manifest, that, as his attention had not been directed to the propeller, he had no especial reason to keep his helm steady, or to keep his course with reference to the propeller as an approaching vessel. The propeller, as the evidence shows, had seen the schooner and was taking measures to avoid her, relying on the fact that she would keep her course; but Lancaster, the man at the helm of the schooner, was ignorant of the approach of the propeller, and had no especial reason for adhering steadily to his course, and, therefore, no reason for remembering particularly whether he did or did not shift his helm.

Mackey says that he saw the propeller's white bow-light a quarter of a mile off, to the starboard, which was the leeward, and over the starboard bow, and that, when she was 150 yards off from the schooner, she sheered across the course of the schooner and ran into the schooner. He can tell nothing as to any change of course in the schooner.

Freeman, the master of the propeller, was outside of the pilot house, forward, directing the navigation of the propeller, the mate being at the wheel. Tomlin, a Delaware river pilot, attached to the propeller, was on the forecastle deck, acting as a lookout. Freeman testifies that the propeller, after leaving her dock, pier 33, East river, went down the river under one bell; that he ported to go under the stern of a ferry boat that was going out from the Fulton Ferry slip on the New York side; that, directly after coming out from under the stern of such ferry boat, he saw the schooner's red light nearly directly ahead, about a half a point on his starboard bow, the lookout having reported a red light ahead; that, when he saw such red light, he ported his wheel, so that the red light got to be a point and a half on his port bow; that he was looking at the schooner through a glass, and ran on, having hooked on to full speed, and saw the sails of the schooner, and saw her, when she was 150 or 200 feet away, luff across his bows; that her red light went out of sight, and he saw her sails go across his bow; that she had no green light burning; and that, as soon as he saw her luff across his bow, he rang to slow, stop and back, and starboarded his wheel, but the propeller struck the schooner almost immediately.

Tomlin testifies that he saw the red light of the schooner; that, when he first saw it, it was a little, half a point, on his port bow;

that as the propeller drew ahead, such red light got to be a point on her port bow; that such red light continued to show until the vessels were 200 feet apart; that he was looking at the schooner with a glass at the time; that the red light went out of sight, and the schooner went across the bow of the propeller; that he saw no green light on the schooner; that the propeller's bells to slow, stop and back were rung as soon as it was discovered that the schooner had starboarded; and that, if the schooner had not starboarded, the vessels would have passed port to port 150 feet apart.

Ohl, a passenger on the propeller, who was forward of her pilot house up to the collision, testifies that he saw the red light of the schooner and saw no other light on her.

Freeman and Tomlin differ, in that Freeman says the red light of the schooner was made on the starboard bow of the propeller, before the propeller ported to avoid the schooner, while Tomlin says that he reported the red light to Freeman when it bore about half a point on the port bow of the propeller and that Freeman then ported right away. But they agree in the main features, that the red light of the schooner was made; that the propeller ported to clear the schooner; that such porting brought the red light to a safe distance on the port side of the propeller for the two vessels to clear each other, if both kept their courses, and that then the schooner hid her red light and came across the bow of the propeller, so as to be struck as she was struck. They also agree, and are supported in this by Ohl, that it was the red light of the schooner that was seen; that no other light on the schooner was seen at any time; and that no green light on the schooner was seen. Seeing a red light ahead and no other light, and no green light, indicated a vessel drawing across from starboard to port of the propeller, and made it proper for the propeller, in the discharge of her duty of avoiding the schooner, to port her helm. If it was the red light of the schooner that was seen, but one light on her having been seen, porting by the propeller would have enabled her to clear the schooner, such porting having brought the red light to be a point and a half on the port bow of the propeller, if the schooner kept her course. It follows, therefore, that, as the propeller did not afterwards starboard, the collision must have been caused by a change of course in the schooner, by her having starboarded after she had been seen by the propeller and after the propeller had taken steps to avoid her.

Was it the red light of the schooner that was seen? The persons on the propeller saw but one light, and that light, they say, remained in view till the schooner drew across the bow of the propeller, to starboard of the propeller, and then disappeared. The schooner was struck on the starboard bow, the line of the blow being in such a direction that if it had been the green light of the schooner that was seen from on board of the propeller, such light would not have gone out of view before the blow. Everything, therefore, concurs to show that it was the red light of the schooner that was seen. If so, it was right for the propeller to port and the schooner must have starboarded.

Testimony was given by Lancaster and Mackey to show that both of the colored lights of the schooner were burning just before the collision. So far as this evidence is relied on to establish that the schooner had a green light burning, which ought to have been seen from on board of the propeller, when the schooner's red light was shut in, I do not think it overcomes the evidence from the propeller that no green light on the schooner was visible to persons on the propeller who were attentively looking for the lights on the schooner. So far as such evidence is relied on to establish that it was the green light of the schooner that was seen and not her red light, it is overborne by the evidence that the propeller saw but one light on the schooner, and that that light was shut in before the blow, and that, after it was shut in, no light on the schooner remained visible.

The allegation in the libel, that the propeller did not have a competent lookout attending to his duty, is not supported.

The libel alleges that the propeller was in fault in not keeping in the middle of the river, and in running so close to the docks. The collision was not in any manner due to the fact that the propeller was not further off from the docks, or was not in the middle of the river, or was too close to the docks, except, as it may be said, that, as the schooner was not in the middle of the river, the collision would not have happened if the propeller had been in the middle of the river. There was abundant room for the propeller to clear the schooner, between the schooner and the New York docks, without embarrassing or crowding the schooner, if the schooner had kept her course.

There is no allegation in the libel that the propeller was in fault in regard to her rate of speed. She was going at the rate of from 7½ to 8 knots an hour by the land, with the tide. The schooner had a strong and favorable wind and was sailing at about the same speed with the propeller. On all the evidence it cannot properly be said, that the rate of speed of the propeller was excessive or improper.

I have not overlooked the testimony as to the position in which the schooner was found under water. But, in addition to the fact that, as she sank, the tendency would be for her to settle down in a line with the course of the tide, I do not perceive, that a conclusion that the schooner was, when struck, in a line with the course of the tide, has any tendency to show that the collision did not take place in the manner and under the circum-

stances contended for on the part of the claimants. The libel must be dismissed, with costs.